IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHERYL TOWNSON,

        Plaintiff,

v.                                                                                                            Case No. 18-2151-JWB &
                                                                                                            18-2645-JWB

KAHN T. HUYNH,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment. (Doc. 62.)[1] The motion is fully briefed and is ripe for review. (Docs. 63, 68, 75.) For the reasons stated herein, the motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

**I. Facts and Procedural History**

In keeping with the standards governing summary judgment, the following statement of facts views the evidence, and all reasonable inferences therefrom, in the light most favorable to Plaintiff, the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (evidence is viewed in the light most favorable to the non-moving party because credibility determinations, weighing conflicting evidence, and drawing appropriate inferences are jury rather than judge functions).

This case is comprised of two lawsuits, a survival action and a wrongful death action. The decedent is Shawn Erik Townson ("Townson"). Case number 18-2151 is a wrongful death action brought by Shawn's surviving wife and heir, Sheryl Townson. Case number 18-2645 is a survival action brought by Sheryl Townson in her capacity as administrator of Shawn's estate. The two

---

[1] All citations to the record are from the lead case, No. 18-2151.

actions have been consolidated and case number 18-2151 is the lead case. (Doc. 26.) In this order, the court will refer generally to Sheryl Townson, in both capacities, as Plaintiff. In both cases, the allegations are that Defendant Dr. Huynh's decision to administer Toradol to Townson resulted in a kidney injury, causing him to become dialysis dependent, and ultimately caused his death. Plaintiff has offered the opinions of two experts on causation, Dr. Algren and Dr. Diamantidis. The court held a *Daubert* hearing on these experts. (Doc. 78.) At the conclusion of the hearing, the court denied Defendant's motion to exclude the testimony of both experts. The court will not revisit issues raised in the *Daubert* motion that are also contained in the motion for summary judgment. Therefore, with respect to the experts' testimony, the discussion of the facts in this order are limited to the relevant opinions and deposition testimony.

From March 26, 2016 to April 14, 2016, Townson was hospitalized at Wesley Medical Center. During his hospitalization, Townson was diagnosed with the following: 1) acute interstitial pancreatitis; 2) necrotizing pancreatitis; 3) lower extremity edema; 4) hypertension; 5) acute kidney injury ("AKI"), resolved; 6) pyuria; and 7) asthma. One day after his discharge, at 11:36 p.m. on April 15, Townson went to the emergency room at Wesley with complaints of dehydration, nausea, and vomiting. Townson was initially treated by Dr. Stangl and received 1000 ml of IV fluids. Dr. Stangl transferred care to Defendant for admission to the hospital and a CT scan. The CT scan reflected worsening swelling and changes from the CT scan that was administered during the previous week. Townson requested pain medication. Defendant ordered 30 mg of IV Toradol, a non-steroidal anti-inflammatory drug. Toradol was administered at 5:31 a.m. on April 16. (Docs. 63 at 1-2; 68 at 2-3.)

Townson's admission summary states that his chief complaint was decreased urine output. Townson's admission plan included the following: "Acute kidney injury. This is likely related to

dehydration and a possible urinary tract infection. He did receive IV fluids in the emergency room; however, we will hold in IV fluids at this time….He did unfortunately received [sic] Toradol while in emergency room, so we will also hold on this at this time." (Doc. 63, Exh. C at 2-3.) The admission note also included the following reasons for admission: urinary tract infection; acute interstitial pancreatitis; abdominal distention; hypertension; lower extremity edema; asthma; and deep vein thrombosis prophylaxis. (*Id.*)

Plaintiff testified that Townson's admitting physician, Dr. Nguyen, told Plaintiff that Townson was having kidney failure and "it's too bad they gave you Toradol." (Doc. 68, Exh. I, Plaintiff depo., 77:20-78:24.) Plaintiff also noted that Dr. Nguyen told Plaintiff that the Toradol was the cause of Townson's kidney failure and that there is a high mortality rate. Dr. Nguyen asked Plaintiff if they had "made plans," which Plaintiff interpreted as a reference to making funeral arrangements for Townson. (Docs. 68 at 27-28; 75 at 7.)

Plaintiff was discharged from the hospital on May 26. Plaintiff's discharge summary includes the following relevant diagnoses: necrotizing pancreatitis; anemia, due to AKI, dialysis dependent; severe sepsis with hypotension; and acute renal failure requiring dialysis without significant evidence of renal recovery. (Docs. 63 at 3; 68 at 4-5.) Plaintiff continued to need dialysis after his discharge and he died eight months later, on January 28, 2017. Plaintiff's death certificate lists the immediate cause of death as renal failure and lists chronic pancreatitis as an underlying cause. (Docs. 68 at 28; 75 at 7.)

Plaintiff's two experts have offered opinions on liability and causation. Dr. Diamantidis has opined that Toradol caused or contributed to Townson's AKI which caused Townson's chronic renal failure and resulted in Townson becoming dialysis-dependent. With respect to Townson's death, Dr. Diamantidis has not opined that Defendant's conduct caused or contributed to his death.

3

(Doc. 68, Exh. E at 2.) Dr. Algren opined that "the administration of ketorolac (Toradol) caused or contributed to cause Mr. Townson to develop acute and ultimately chronic renal failure, which caused or contributed to cause his death." (Doc. 68, Exh. H at 2-3.)

During their depositions, the experts were pressed on their causation opinions. Dr. Diamantidis testified as follows:

> Q. To a reasonable degree of medical certainty, can you say, would - - would Shawn Townson have developed chronic renal failure if - - if he hadn't been given Toradol?
>
> MR. DAY: Object. Lack of foundation.
>
> A. I - - I cannot say.
>
> Q. In your report where you mention that AKI caused or contributed to the chronic renal failure, is it also your opinion that Toradol caused or contributed to cause his chronic renal failure?
>
> MR. DAY: Same objection, lack of foundation.
>
> A. I believe the Toradol contributed to the AKI and the AKI contributed to his chronic renal failure. So, yes, I would conclude that the Toradol contributed in some way to the chronic renal failure.

(Doc. 63, Exh. E., Dr. Diamantidis depo. at 81-82.)

When pressed as to whether Townson would not have needed dialysis but for the Toradol, Dr. Diamantidis testified as follows:

> Q. Right. And so if we go to the fact that he became dialysis dependent and remained dialysis dependent, which is what's discussed in number 3 - -
>
> A. Uh-huh.
>
> Q. - - would you agree that you cannot say to a reasonable degree of medical probability that the dialysis, the - - the - - and the chronic need for dialysis would not have occurred had it not been for the Toradol?
>
> A. I cannot say that, no.
>
> Q. Okay. Because there just isn't an evident - - isn't an evidence basis to be able to form that conclusion?

4

A. There is not enough evidence of Toradol in acute kidney injury - - preexisting acute kidney injury to be able to discern that.

Q. And that would be especially true here where Mr. Townson was extremely ill in other ways?

A. Yes, sir.

Q. And the fact he was extremely ill in other ways would tend to increase the likelihood that he would remain dialysis dependent?

A. Yes.

Q. Regardless of Toradol?

A. So the - - the chronicity of his kidney failure was probably related to his ongoing medical issues.

(*Id.* at 68-69.)

With respect to her opinion on Townson's death, Dr. Diamantidis testified as follows:

A. I would say that I think his death was multifactorial and that he had multiple medical conditions which - - some of which were more severe that I would rank as - - for example, his severe malnutrition from his ongoing pancreatitis and gastric obstruction, but I cannot rule out the contribution of his kidney failure.

\*\*\*

Q. Okay. So if we don't ask you to rule something out, if I simply ask you medical probability, in looking at how sick this gentleman was, would you agree that the medical probability is he would have died regardless of whether he received the Toradol?

A. I would say that is accurate.

(*Id.* at 70, 73.)

Dr. Algren testified as follows during his deposition:

Q. Are you able to say to a reasonable degree of medical probability that the kidney injury would not have occurred were it not for the Toradol?

A. I feel that the Toradol was a significant factor in development of the acute kidney injury.

Q. Okay. But whether or not this patient, because of his underlying disease condition, would have developed severe enough AKI that he would have been on dialysis even without the Toradol, would you agree that you really can't offer an opinion on that?

A. Can I say that it 100 percent wouldn't have occurred, I can't say that. But I still feel like the fact that he received Toradol contributed to and was a significant, significant insult [sic] to his kidney.

\*\*\*

Q. And you would say that the dialysis may have contributed to his death just in the sense that it was another thing that was going on?

A. Well, yeah, I mean, somebody that's dialysis dependent. I mean, being in renal failure puts you at risk for a whole host of medical conditions, as well as puts you at risk of infection. So, some of his episodes of sepsis were related to his dialysis catheter, so that's clearly, you know, morbidity that he suffered that was directly related to him being in renal failure. But the primary cause of his death would appear to have been his severe malnutrition.

Q. Right. Which was secondary to his pancreatitis, correct?

A. Uh-huh. I would agree with that.

Q. Yeah. And you would agree - -1 understand what you are saying about the Toradol or about the AKI. But wouldn't you agree that given the condition he was in, that it's likely that he would have died even if he hadn't had the kidney injury?

A. He very well could have died not having a kidney injury. But I think having renal failure contributed to his death. I mean, that's a significant morbidity.

Q. Okay. Let me put it this way, you would agree that you cannot offer an opinion to a reasonable degree of medical probability that, but for the fact that he had the AKI, he would not have died? You can't say that?

A. I can't say that.

Q. Because, again, the big issue here was the malnutrition, secondary to the pancreatitis?

A. At the end of his life, that was a major issue, yes.

(Doc. 63, Exh. F., Dr. Algren depo. at 90-93.)

> Dr. Algren further testified as follows regarding the renal failure:
>
> Q. If he's not given this Toradol, is it your opinion that that mild acute kidney injury will resolve, more likely than not?
>
> MR. DAY: Same objection.
>
> A. I feel, yeah, most likely he would not have developed his renal failure that he developed.
>
> BY MR. BUDDEN:
>
> Q. Okay. Any renal treatment that he has after April 16th of 2017, do you believe that is caused by the administration of Toradol to him on that morning of April 16th?
>
> MR. DAY: Object to form. Foundation.
>
> A. Given that he developed acute kidney injury and renal failure and then subsequently became dialysis dependent, therefore, yes.

(*Id.* at 108.)

Defendant now moves for summary judgment on the basis that the causation opinions are not sufficient to establish liability under Kansas law.

**II. Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Id.* The court views all evidence and reasonable inferences in

the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

**III. Analysis**

This is a medical malpractice case. In the survival action, the issue is whether the Toradol caused Townson's AKI which then caused Townson to suffer a chronic kidney injury resulting in the need for dialysis until his death. In the wrongful death action, the issue is whether the kidney injury, which was allegedly caused by the Toradol, caused or contributed to Townson's death. Defendant moves for summary judgment on the basis that Plaintiff cannot, as a matter of law, establish that Defendant's conduct was the cause of Townson's injuries. Defendant argues that Plaintiff must show that but for Defendant's conduct the injuries would not have occurred. Plaintiff contends that Kansas law only requires evidence that establishes that Defendant's conduct caused or contributed to Townson's injuries.

To establish a claim of medical malpractice under Kansas law, Plaintiff must show that the "injury proximately resulted from the health care provider's breach of the standard of care."[2] *Castleberry v. DeBrot*, 308 Kan. 791, 802, 424 P.3d 495, 505 (2018). Proximate cause is defined under Kansas law as:

> "the cause that in a natural and continuous sequence, unbroken by any superseding cause, both produced the injury and was necessary for the injury. The injury must be the natural and probable consequence of the wrongful act. *Yount v. Deibert*, 282 Kan. 619, 624-25, 147 P.3d 1065 (2006). Individuals are not responsible for all possible consequences of their negligence, but only those consequences that are probable according to ordinary and usual experience." *Hale v. Brown*, 287 Kan. 320, 322, 197 P.3d 438 (2008).

Proximate cause is ordinarily a factual question to be resolved by the trier of fact. *Cullip v. Domann*, 266 Kan. 550, 556, 972 P.2d 776 (1999). *But see Hale*, 287 Kan. at 324, 197 P.3d 438 (noting when "all the evidence on which a party relies is

---

[2] Although there are other elements that Plaintiff must establish, those elements are not at issue in Defendant's motion. (Doc. 63.)

undisputed and susceptible of only one inference, the question of proximate cause becomes a question of law").

> "There are two components of proximate cause: causation in fact and legal causation. To establish causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury can conclude that more likely than not, **but for defendant's conduct**, the plaintiff's injuries would not have occurred. To prove legal causation, the plaintiff must show it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes was foreseeable." *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 623, 345 P.3d 281 (2015).

*Castleberry*, 308 Kan. at 802–03 (emphasis supplied).

Defendant argues that the undisputed facts establish as a matter of law that Plaintiff cannot prove proximate cause. This is because Plaintiff's experts have not testified that but for Defendant's conduct Townson would not have died.[3] Plaintiff argues that Dr. Algren's opinion is sufficient to defeat summary judgment because he testified that Defendant's action caused or contributed to Townson's death. In support, Plaintiff cites to *Burnette v. Eubanks*, 308 Kan. 838, 851, 425 P.3d 343, 353 (2018) and PIK 4th, which are the Kansas jury instructions.

In *Burnette v. Eubanks*, the Kansas Supreme Court was answering whether "an actor's conduct that 'contributes to' an event that brings about the claim is the same as a 'but-for' cause of a plaintiff's injuries." 308 Kan. at 842. Essentially, the defendants were challenging whether the jury instructions communicated a but-for causation requirement. In that case, the decedent had committed suicide. The plaintiffs, the decedent's parents, alleged that the defendants, medical providers, breached the applicable standard of care by failing to diagnose and treat a spinal epidural abscess. The evidence at trial was that this breach of the standard of care led to spinal meningitis, significant permanent nerve damage, and arachnoiditis. *Burnette*, 308 at 840, 853. The decedent

---

[3] As discussed *infra*, Defendant concedes that Dr. Algren has offered but-for causation testimony with respect to Townson's kidney injury which is the issue in the survival action.

9

committed suicide due to his pain. The experts opined that the defendants' negligence caused the decedent to develop arachnoiditis, this condition then contributed to his suicide. *Id.* at 853.

In deciding the issue, the Kansas Supreme Court reviewed the definition of proximate cause and the requirement of causation in fact and legal causation as set forth above. *Id.* at 842, 846. The court did not indicate that the jury was instructed on the definition of proximate cause.[4] The court, however, reviewed Kansas law regarding causation. Based on that review, the court concluded that a defendant's negligence must be a but-for cause of the event, although there can be multiple but-for causes. *Id.* at 852.

Plaintiff argues that *Burnette* supports her position in that Dr. Algren's opinion that Toradol caused or contributed to cause Townson's death is sufficient to establish that Defendant's conduct had a share in producing the injury. (Doc. 68 at 32) (quoting *Burnette*, 308 Kan. at 852.) Plaintiff relies on the language from the PIK comparative fault instruction that uses the language "caused or contributed to" and does not directly address the but-for causation discussed in *Burnette*. *Burnette* does not stand for the proposition that an expert's opinion that utilizes the terms "caused or contributed to" is sufficient to establish proximate cause. Rather, it supports the conclusion that the jury instructions, *as a whole*, correctly communicated Kansas law and a jury could only find proximate cause if the negligence was a but-for cause of the injury.

The jury in *Burnette* was instructed that a defendant was "at fault only if that defendant's negligence 'caused or contributed to the event *which brought about the claim for damages*." 308 Kan. at 843 (emphasis in original). The jury was further instructed that "*your first obligation is to determine if any defendant is at fault….*" *Id.* (emphasis in original). The jury was then told that the plaintiffs' claim was that the decedent died "*due to the defendants' fault* in one or more of the

---

[4] This is most likely due to the recommendation that no instruction be given to a jury on proximate cause. *See* PIK 4th (Civ.) 104.01 cmt.

10

following respects." *Id.* (emphasis in original). The court found that these instructions, viewed collectively, would require a jury "to have found a defendant's negligence was a 'but-for' cause of [the decedent's] death." *Id.* The instructions "correctly stated the law and appropriately communicated to the jury the test to be applied." *Id.*

Reviewing the analysis in *Burnette*, the court finds that the law in Kansas has not changed and the but-for standard remains. While *Burnette* recognizes that there can be more than one but-for cause of an injury, which could have been the case here with multiple diagnoses, the evidence must sufficiently establish that Defendant's actions were either "the sole cause or [] one cause that combined with others to produce the result." 308 Kan. at 856 (citing *Lollis v. Superior Sales Co., Inc.*, 224 Kan. 251, 263, 580 P.2d 423 (1978); Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 26, comment c (2010) (harm may have more than one cause, and liability attaches to actor's negligence so long as it is one of the causes)). However, it seems clear that the phrase "one cause that combined with others to produce the result," *id.*, is still subject to the requirement that any legal cause be "necessary for the injury." *Hale*, 287 Kan. at 322. In other words, a but-for cause can be one of a combination of causes, but it must be an indispensable cause of the injury. *See Burnette*, 308 Kan. at 852 (the negligence must have "had a share in producing the injury" and no fault could be assigned if jury believed injury would have occurred without the defendant's negligence). In *Burnette*, the defendants' actions were not the sole cause of the decedent's death. Rather, the defendants' actions caused the arachnoiditis, which in turn brought about the pain that the decedent sought to escape with his suicide. Although the Supreme Court recognized that the experts did not express their opinions by stating that the decedent's "suicide would not have occurred 'but-for' defendants' medical negligence," this was not required. *Id.* at 856. The court found that the experts' testimony as a whole was sufficient to establish but-for

11

causation. *Id.; see also Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 627, 345 P.3d 281, 288 (2015) (in a medical malpractice case a plaintiff must "come forward with evidence that the patient would not have died but for [the defendant's] alleged breach of the standard of care.") The experts did this by linking the defendants' negligent conduct to the depression and pain which, at least, in part, caused the decedent to commit suicide. *Id.* at 856. Thus, there was evidence that the defendants' negligence was an indispensable cause of the decedent's suicide. *See id.* at 852 (no legal causation for conduct that is "too remote for liability to attach.")

In this case, the experts were directly asked about but-for causation. Dr. Diamantidis testified that Townson would have died absent Defendant's conduct due to his other conditions. Dr. Algren testified that he could not give an opinion within a reasonable degree of medical probability that, but for the AKI, Townson would not have died. Both experts testified that Townson's other medical conditions were significant and would likely result in his death. In other words, Defendant's actions were not the "sole cause" or "one cause [that] combined with others to produce the result." *Burnette*, 308 Kan. at 856.

Plaintiff argues that Defendant's actions had a share in producing the injury and, therefore, that is sufficient to establish causation. The Kansas Supreme Court has held that a defendant does not have a share in producing the injury if the evidence is that the "injury would have occurred without a defendant's negligence." *Id.* at 852. Reviewing the experts' testimony in a light most favorable to Plaintiff as the non-moving party, the undisputed facts show that the experts have testified that Plaintiff most likely would have died even absent Defendant's negligence.

Plaintiff also argues that the death certificate and the medical records support that Townson would not have died had it not been for the Toradol prescribed by Defendant. The death certificate lists both renal failure and chronic pancreatitis for the cause of death. Plaintiff fails to explain how

these findings establish that but for the Toradol administration Townson would not have died. The death certificate does not establish this. With respect to the medical records, although they indicate that the Toradol may have resulted in a kidney injury, Plaintiff has not pointed to any records that support a finding that Townson would have survived but for Defendant's conduct. The statements in those records were made months before Townson's death. Therefore, based on the undisputed facts and the experts' opinions, Plaintiff has not established that Defendant's negligence caused or contributed to Townson's death, i.e. but for Defendant's conduct Townson more than likely would not have died.

Dr. Algren, however, has testified that Plaintiff probably would not have developed renal failure if he had not been given Toradol by Defendant. The court finds that this testimony is sufficient to establish but-for causation with respect to the survival action. In his brief, Defendant essentially concedes that Dr. Algren has offered but-for causation testimony with respect to the kidney injury. (Doc. 63 at 21.)

Accordingly, Defendant's motion for summary judgment on the survival claim is DENIED. Defendant's motion for summary judgment on the wrongful death claim is GRANTED.

**IV. Conclusion**

Defendant's motion for summary judgment is DENIED IN PART AND GRANTED IN PART. (Doc. 62.)

IT IS SO ORDERED this 24th day of March, 2020.

                                                          _____s/ John W. Broomes_____
                                                          JOHN W. BROOMES
                                                          UNITED STATES DISTRICT JUDGE